**AMERICAN GENERAL HOME EQUITY LINE OF CREDIT AGREEMENT (REVOLVING CREDIT) (called "Agreement")**

ACCOUNT NO ███████

| Borrowers (called you, your or Borrower) Name and Address | Lender |
|---|---|
| ROGER G MORFEY<br>GERALDINE L MORFEY<br>3108 W HENSLEY RD<br>CHAMPAIGN, IL 61821 | AMERICAN GENERAL FINANCIAL SERVICES OF ILLINOIS, INC.<br>505 S NEIL ST<br>CHAMPAIGN, IL 61820-5231 |

| | | | |
|---|---|---|---|
| Title Insurance Fee | $ | 375.00 | PAID TO ALLIED TITLE CO |
| Appraisal Fee | $ | 225.00 | PAID TO PHIL TRAUTMAN |
| N/A | $ | 0.00 | PAID TO N/A |
| N/A | $ | 0.00 | PAID TO N/A |
| N/A | $ | 0.00 | PAID TO N/A |
| N/A | $ | 0.00 | PAID TO N/A |
| N/A | $ | 0.00 | PAID TO N/A |
| N/A | $ | 0.00 | PAID TO N/A |
| N/A | $ | 0.00 | PAID TO N/A |
| N/A | $ | 0.00 | PAID TO N/A |

Date of Agreement 03/18/02
Date Finance Charge Begins to Accrue 03/22/02
Initial Line of Credit $ 92499.00
Initial Advance $ 88200.00

The Mortgage secures the initial and all future advances under this Agreement.

This Agreement is secured by a Mortgage on property located at: 3108 W HENSLEY RD, CHAMPAIGN, IL. 61821

Credit insurance is not required to obtain credit. Credit insurance will not be provided unless you sign below and agree to pay the additional cost. Credit insurance may be provided by Lender's affiliate. Lender expects to profit from the sale. You consent to this. There is no credit life insurance coverage during the rescission period.

| Type of Credit Insurance | Monthly Insurance Rate | Signature |
|---|---|---|
| Credit Life Insurance - Single | $ .720 * | I want single credit life insurance.<br>Signature _____<br>First Named Borrower |
| Credit Life Insurance - Joint | $1.200 * | We want joint credit life insurance.<br>Signature _____<br>First Named Borrower<br>Signature _____<br>Second Named Borrower |
| Credit Disability Insurance - Single<br>If Single or Joint Credit Life Ins. is elected, Single Disability Ins. is available. | $1.430 * | I want single credit disability insurance.<br>Signature _____<br>First Named Borrower |

*Charge per $1,000 average daily balance of Account per month. Term of credit insurance is equal to one billing cycle.

**CREDIT INSURANCE CANCELLATION**

You may cancel your credit insurance coverage at any time. If you cancel your credit insurance within the first 30 days of coverage, all credit insurance premiums paid will be refunded. To cancel your coverage, submit a signed and dated written request to cancel, along with the insurance certificate you received (if available), to the office servicing this account. If joint coverage is in effect, both borrowers must sign the cancellation request. At the Lenders option, refunds may be applied to your balance due or given to you. Cancellation will take effect on the billing cycle after Lender receives proper notice.

**REVOLVING CREDIT LIFE AND CREDIT DISABILITY INSURANCE DISCLOSURE STATEMENT**

You understand that the credit life and/or credit disability insurance you are purchasing may not cover your entire line of credit. If your revolving loan balance exceeds $ 100000 , the amount of benefit paid will be the lesser of the total amount due on your Account on the date of loss, less any advances that do not qualify or $ 100000 .

In this Agreement, "you," "your" and "Borrower" mean the borrower(s) who signs this Agreement. "Lender" refers to AMERICAN GENERAL FINANCIAL SERVICES OF ILLINOIS, INC. or any person to whom the Agreement is assigned. This Agreement covers the terms and conditions of your Equity Line of Credit Account. If more than one person signs, each will be responsible for repaying all sums advanced under this Agreement. Your Credit Line is a revolving line of credit extended to you and secured as described above. You can obtain funds from your Account (up to your Line of Credit) directly from Lender or by using the special checks Lender supplies to you. You may pay your total unpaid balance at any time or in installments, as provided below.

**Required Insurance:** You must obtain fire and extended coverage insurance for term of loan covering security for this Agreement as indicated above, naming Lender as Loss Payee. You may obtain any required insurance from anyone you choose, if acceptable to Lender.

**Available Credit:** You may obtain funds directly from Lender or through your special checks up to your available credit. Your available credit is your Line of Credit (initial line of credit shown above) less the total unpaid balance, excluding Finance Charges, of your Account. If you make loan payments by check, Lender will adjust your available credit seven days after Lender receives your check to allow for check clearing. You agree not to request funds in an amount that would cause you to exceed your available credit. If you do so, Lender is not obligated to honor your request, but if Lender does lend you an amount over your available credit, you agree to pay Lender that excess amount, plus Finance Charges, immediately upon our request. Lender may increase your Line of Credit from time to time.

**Minimum and Initial Draw and Balance Requirements:** The minimum credit advance by check that you can receive is $100. You must take a minimum initial advance of $2500 on "Date Finance Charge Begins" stated above.

**Promise to Pay:** You promise to pay Lender: (a) amounts due under this Agreement; (b) Finance Charges, Late Charges, and other charges provided in this Agreement; (c) credit insurance charges, if any; (d) collection costs permitted by applicable law, including reasonable attorneys fees and court costs; (e) amounts in excess of your credit limit that Lender may lend you; and (f) amounts that Lender may (but need not) pay or that are otherwise due under your Mortgage.

**Access to Account:** Your right to obtain advances under the Agreement expires 5 years from the "Date of Agreement" shown above (the Draw Period). The period beginning upon the expiration of the Draw Period and continuing until the account is paid in full is the Repayment Period. The required Federal Truth-in-Lending disclosures included in this Agreement, such as the "ANNUAL PERCENTAGE RATE," apply to both the Draw Period and the Repayment Period.

**Payments:** You may prepay your entire outstanding balance or other amount at any time. You may not use your special checks to pay any amounts due under this Agreement. Because the Periodic Finance Charge is computed each day, you will contact Lender regarding the exact payoff amount for the day you intend to make full payment.

If you do not prepay the entire unpaid balance of your Account, you agree to pay at least the Minimum Monthly Payment by the date shown on your monthly statement at the address indicated. Payments are due during the Draw and Repayment Periods. Payments will be applied to unpaid amounts as follows: First, charges (other than insurance and Finance Charges); Second, any insurance charges; Third, Periodic Finance Charges; and Fourth, the unpaid outstanding balance of your Account (including all other fees or charges you are obligated to pay).

**Minimum Monthly Payments:** Your minimum monthly payment and any balloon payment apply as checked below.

☐ **PERCENT OF BALANCE OPTION:** You agree to make a minimum monthly payment of N/A % of your New Balance as shown on your monthly statement, plus any past due amount. The length of the Repayment Period is determined by the amount of the unpaid balance at the beginning of the Repayment Period, but in no event less than the Periodic Finance Charges and insurance charges due. The Repayment Period will end on the Balloon Payment Date, if the "Balloon Payment" paragraph is checked below.

☒ **ASSUMED TERM OPTION:** You agree to make the minimum monthly payment necessary to repay your New Balance as shown on your monthly statement over a 20 year period after each advance (the "Assumed Term"). The length of the Repayment Period is determined by when the later of these events occurs: (a) the end of the billing cycle in which the final advance during the Draw Period is taken or (b) the end of the billing cycle in which the final Annual Percentage Rate change during the Draw Period occurs. During the Draw Period, at the end of each billing cycle in which an advance is taken or the Annual Percentage Rate changes, your minimum monthly payment will be adjusted to amortize your new balance as shown on your monthly statement over the Assumed Term. During the Repayment Period, your minimum monthly payment will change each time the Annual Percentage Rate changes, but the final maturity date will remain the same. The Repayment Period will end on the Balloon Payment Date, if the "Balloon Payment" paragraph is checked below.

☐ **BALLOON PAYMENT:** Under the option checked above, you agree to make minimum payments until N/A (Balloon Payment Due Date). On the Balloon Payment Due Date, you must repay the entire balance of your account, plus unpaid Finance Charges, in a single balloon payment.

If the minimum monthly payment determined under any option is less than $50, the minimum monthly payment will be $50 or, if less, the unpaid balance on your account. Payments must be received at our address by the due date indicated on your monthly statement.

SEE ALL PAGES FOR ADDITIONAL PROVISIONS AND IMPORTANT INFORMATION

ILX181 (10-14-01) Revolving Real Estate     Page 1 of 4     Borrower's Initials _R.M._ _G.M._

**Finance Charge:** Finance Charges are the total of (a) Periodic Finance Charges, (b) Points Finance Charge, (c) Application Fee as agreed, and (d) Annual Fee.

(a) **Periodic Finance Charges:** This is the interest charged on the balance of your Account during each billing cycle. The Periodic Finance Charge is calculated from the date that each advance, check or charge is posted to your Account. The Periodic Finance Charge is computed by multiplying the average daily balance on your Account in each billing cycle times the monthly periodic rate (See Rate of Periodic Finance Charge below). The average daily balance is determined by totaling all daily unpaid balances in each billing cycle and dividing the total by the number of days in that cycle. A daily unpaid balance is the amount owed each day, including any unpaid charges, credit insurance charges, and Finance Charges for prior billing cycles.

(b) **Points Finance Charge:** This is the one-time fee that Lender charges for opening this Account. The Points Finance Charge is $ __3699.00__. The Points Finance Charge is due and payable on the "Date Finance Charge Begins to Accrue" stated herein. You agree that the Points Finance Charge may be charged to your account balance and is fully earned and not refundable.

(c) **Annual Fee.** The Annual Fee is 1% of your Line of Credit, but not less than $150 for the first year and $50 for following years of this Agreement. The Annual Fee for the first year of this Agreement is [X] waived or [ ] due on the "Date Finance Charges Begins to Accrue." The Annual Fee for the following years of this Agreement is [ ] waived or [X] due annually on the Anniversary Date of this Agreement.

**Rate of Periodic Finance Charge:** The monthly periodic rate is fixed or variable, as indicated below:

(a) **Fixed Rate:** (If checked)[ ] The monthly periodic rate is the Annual Percentage Rate divided by 12. Finance Charges are computed by applying a monthly periodic rate of __N/A__ % (__N/A__ % **ANNUAL PERCENTAGE RATE**) to the average daily balance.

(b) **Variable Rate:** (If checked)[X] The monthly periodic rate is a variable rate which may change annually on the first day of the billing cycle following each anniversary date of your account (the Anniversary Date). The monthly periodic rate is the sum of the Index Rate plus __3.750__ percentage points (the "Margin"), divided by 12. The initial monthly periodic rate on your account is __.7083__% (__8.500__% initial **ANNUAL PERCENTAGE RATE**). The Index Rate applicable for each one-year period will be the highest prime rate published in the "Money Rates" listing of The Wall Street Journal (the "Index"), on the first business day after the 14th day of the month preceding the month in which your Anniversary Date falls. (For example, if your Anniversary Date is May 9, your Annual Percentage Rate may change each year on May 9, using the Index Rate in effect on the first business day after the 14th day of April.) The new Annual Percentage Rate will apply to new advances and charges and to the existing unpaid balance (excluding accrued Periodic Finance Charge) of your Account. An increase in the Index Rate or the Introductory Rate stated below (at its expiration) may increase the Annual Percentage Rate, Finance Charge, and minimum monthly payment on your account.

The maximum annual increase in the **ANNUAL PERCENTAGE RATE** for a variable periodic rate will not exceed __2.000__ percentage points. If the Index is no longer available, Lender will change the Index and Margin so that the Annual Percentage Rate produced by the new index and margin is substantially similar to the Annual Percentage Rate in effect when the Index becomes unavailable.

(c) **Introductory Rate:** (If checked)[ ] The Annual Percentage Rate on your Account is an Introductory Rate. Your Introductory Rate is a monthly periodic rate of __N/A__ % (__N/A__ % **ANNUAL PERCENTAGE RATE**). This rate will be in effect for the first __NA__ months your account is open (the "Introductory Period"). At the end of the Introductory Period, your monthly periodic rate is the rate that would have been applied as indicated above.

The **ANNUAL PERCENTAGE RATE** will not exceed __15.000__ %, and never be less than 8%.

**Late Charge:** If you pay any minimum monthly payment 16 days or more after the date due you will pay $10.

**Prepayment Penalty:**

(a) If checked [X] and you prepay the entire amount due within 5 years from the date of this Agreement, and you or Lender terminate the Line of Credit, you will pay a prepayment penalty of 4% of the Line of Credit. No penalty will be charged: (a) if the Agreement is refinanced by Lender or its affiliate; (b) for prepayment by insurance proceeds; (c) in the event of suit, foreclosure or exercise of a due on sale clause; or (d) after 5 years from date of the most recent advance under this Agreement.

(b) If checked [ ] you may prepay the entire amount due at any time without penalty.

**Bad Check Charge:** You will pay the greater of $ __25.00__ or all costs and expenses, including reasonable attorneys' fees, incurred, in connection with the collection of any check that is dishonored because there is no such account or because there is not sufficient funds in the account or sufficient credit available under the account.

**Other Charges:** You agree to pay any amounts actually incurred by Lender at any time for services rendered in connection with your Account for document preparation, title examination, appraisal, title insurance, and fees and taxes paid to public officials for perfecting, recording, releasing or satisfying the Mortgage. You agree to pay all amounts incurred by Lender to collect this debt or to foreclose on real estate security. You agree that these fees may be charged to your Account balance.

**Changes in this Agreement:** Lender may change the terms of this Agreement if you consent or if such changes benefit you or are insignificant. Lender may change any amounts that we collect for taxes, or property insurance, or credit insurance, if applicable. Prior written notice of changes will be given to you when required by applicable law. Changes may apply to both new and outstanding balances unless prohibited by applicable law. Termination of your credit limit will occur only as provided in the "Default and Cancellation of Agreement" and "Suspension or Reduction of Credit Privileges" paragraphs.

**Default and Cancellation of Agreement:** Lender has the right to terminate your Credit Line Account and to require you to pay your entire balance plus all other accrued but unpaid charges immediately because of:

(a) failure to make any payment when due under this Agreement;

(b) fraud or material misrepresentation in connection with the credit line, including failure to supply Lender with any material information requested or supplying Lender with misleading, false, incomplete or incorrect material information;

(c) the filing of a bankruptcy petition by or against you and your failure to make any payment when due under this Agreement;

(d) the death of any borrower who signs this Agreement which adversely affects the property or Lender's rights in the property securing this Agreement;

(e) the institution of foreclosure proceedings or condemnation proceedings on the property or the institution of a trustor's sale by a lienholder, or governmental seizure of the property;

(f) the sale or transfer of any interest in the property securing this Agreement, without Lender's consent (unless Lender's consent is not required under your Mortgage);

(g) the creation of a lien on the property if such lien adversely affects the property or Lender's rights in the property securing this Agreement;

(h) failure to maintain the property, failure to pay real estate taxes on the property, abandonment of the property, failure to keep the property insured, or any action which is a default under your Mortgage which adversely affects the property or Lender's rights in the property securing this Agreement; or

(i) any other action or inaction you take that adversely affects the property or Lender's rights in the property securing this Agreement.

After default, you will pay Lender's court costs, reasonable attorney fees (if attorney is not Lender's salaried employee), if not prohibited by applicable law, and other collection costs related to the default.

Any balance outstanding under this Agreement when the credit limit is terminated will continue to accrue interest at the fixed or variable periodic rate (as applicable) until paid in full. You agree to pay interest on any judgment at the contract rate.

**Suspension or Reduction of Credit Privileges:** Lender has the right to prohibit additional advances or extensions of credit and to reduce the credit limit applicable to this Agreement if:

(a) the amount of your unused equity (at the time the credit was granted or last renewed) in the property securing this Agreement has decreased by 50% or more, based on a decrease in the appraisal value from the time the credit was granted or last renewed;

(b) Lender reasonably believes that you will be unable to fulfill the repayment obligations under this Agreement because of a material change in your financial circumstances (including the filing of a bankruptcy petition);

(c) you are in default of any of the material terms or conditions of this Agreement, including frequent overdrawals of your line of credit or failure to use or occupy real estate security as your primary residence;

(d) any governmental action occurs that prevents Lender from charging the Annual Percentage Rate provided for in this Agreement or that adversely affects Lender's rights in the property securing this Agreement such that the value of our security interest in the property is less than 120% of your credit limit;

(e) the maximum Annual Percentage Rate is reached;

(f) any borrower who signs this Agreement requests Lender to prohibit additional advances or to reduce the credit limit; or

(g) any of the events listed under "Default and Cancellation of Agreement" occurs.

Notice will be given to you as required by applicable law.

**Required Insurance.** Unless you provide Lender with evidence of the insurance coverage required by your Agreement with Lender, Lender may purchase insurance at your expense to protect its interests in your collateral. This insurance may, but need not, protect your interests. The coverage that Lender purchases may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that you have obtained insurance as required by this Agreement. If Lender purchases insurance for the collateral, you will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

**Tax Deductibility:** You should consult a tax advisor regarding the deductibility of interest and charges for this Account.

**Miscellaneous:** If any provision of this Agreement is finally determined to be void or unenforceable under any law, rule, or regulation, all other provisions of this Agreement will remain valid and enforceable. Lender's failure to enforce any terms of the Agreement shall not be deemed to constitute a waiver of such terms. In order for any amendment to this Agreement to be valid, it must be in writing and signed by you and Lender.

SEE ALL PAGES FOR ADDITIONAL PROVISIONS AND IMPORTANT INFORMATION

ILX182 (10-14-01)  Revolving Real Estate    Page 2 of 4    Borrowers' Initials __R.M.__ __G.M.__

# YOUR BILLING RIGHTS - KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

## Notify Us In Case of Errors or Questions About Your Bill

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet of paper at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

## Your Rights and Our Responsibilities After We Receive Your Written Notice

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Applicable Law.** This is an Equity Line of Credit Agreement made pursuant to the Illinois Financial Services Development Act 205 ILCSàà675/l et seq., and related provisions, except to the extent preempted by 12 U.S.C. à 1735F-7a (the federal first mortgage preemption) and the Federal Alternative Mortgage Transaction Parity Act, 12 U.S.C. à 3800 et seq., and the rules issued thereunder.

**NOTE: This Agreement contains multiple pages that include important information about your loan.**

BY SIGNING BELOW, YOU HAVE READ, UNDERSTAND AND AGREE TO THE TERMS AND CONDITIONS IN THIS DOCUMENT, INCLUDING THE ARBITRATION PROVISIONS THAT PROVIDE, AMONG OTHER THINGS, THAT EITHER YOU OR LENDER MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN YOU AND LENDER BE SUBMITTED TO BINDING ARBITRATION. IF YOU OR LENDER ELECTS TO USE ARBITRATION, BOTH YOU AND LENDER WILL HAVE WAIVED YOUR AND LENDER'S RIGHT TO A TRIAL BY A JURY OR JUDGE, THE DISPUTE WILL BE DECIDED BY AN ARBITRATOR AND THE DECISION OF THE ARBITRATOR WILL BE FINAL. ARBITRATION WILL BE CONDUCTED PURSUANT TO THE RULES OF THE NATIONAL ARBITRATION FORUM.

| Date | 3/18/02 | Borrower's Signature: Roger Gene Murphy | SIGN HERE |
| Date | 3/18/02 | Borrower's Signature: Geraldine L Murphy | SIGN HERE |
| Date | | Borrower's Signature | SIGN HERE |
| Date | | Witness | SIGN HERE |
| Date | 3-18-02 | Witness | SIGN HERE |

**AMERICAN GENERAL FINANCE**

SEE ALL PAGES FOR ADDITIONAL PROVISIONS AND IMPORTANT INFORMATION

**ARBITRATION PROVISIONS:**

Arbitration is a method of resolving disputes without filing a lawsuit in court. When you sign this document (hereinafter, the "Loan Agreement"), you and Lender agree to all the arbitration provisions in this document (hereinafter, the "Arbitration Provisions").

**RIGHT TO ELECT ARBITRATION:** You or Lender can elect to have "Covered Claims" (as defined below) be resolved by **binding arbitration** in accordance with the Arbitration Provisions, except for matters not covered by arbitration (as provided below). This election applies even if there is a pending or completed judicial action (up to entry of final judgment or settlement). If you bring a Covered Claim against Lender in court (either as a claim or counterclaim), Lender can choose to have that Covered Claim resolved by binding arbitration. If Lender brings a Covered Claim in court (either as a claim or counterclaim), then you can elect to have that Covered Claim resolved by binding arbitration.

**YOU UNDERSTAND THAT YOU ARE VOLUNTARILY WAIVING YOUR RIGHT TO A JURY OR JUDGE TRIAL FOR SUCH DISPUTES.**

**DEFINITION OF COVERED CLAIMS:** "Covered Claims" are any and all claims and disputes not expressly excluded by the Arbitration Provisions that have arisen or may arise between: you and Lender; you and Lender's affiliates; or you and the employees, agents, officers, or directors of Lender or its affiliates. Covered Claims include, without limitation, all claims and disputes arising out of, in connection with, or relating to your loan from Lender today or any previous loan from Lender (including all amendments, modifications and refinancings); any previous retail installment sales contract or loan assigned to Lender; all documents, actions, or omissions relating to this or any previous loan or retail installment sales contract; any insurance product, service contract, or warranty purchased in connection with this or any previous loan or retail installment sales contract; whether the claim or dispute must be arbitrated; the validity of the Arbitration Provisions, your understanding of them, or any defenses as to the enforceability of the Loan Agreement or the Arbitration Provisions; any negotiations between you and Lender; any claim or dispute based on the closing, servicing, collection, or enforcement of any transaction covered by the Arbitration Provisions; any claim or dispute based on an allegation of fraud or misrepresentation; any claim or dispute based on or arising under any federal or state statute or rule; any claim or dispute based on a contract or an alleged tort; and any claim for injunctive or equitable relief. An "Affiliate" means any company that Lender controls, that control Lender, or that is under common control with Lender.

**SUBMISSION OF THIRD PARTY CLAIMS:** If either you or Lender choose arbitration, then you and Lender agree to submit to arbitration all claims or disputes that you or Lender may have against (a) all other persons or entities involved with any transaction described under the definition of Covered Claims, (b) all persons or entities who signed or executed any of the documentation relating to any transaction described under the definition of Covered Claims, and (c) all persons or entities who may be liable to either you or Lender regarding any transaction described under Covered Claims.

**MATTERS NOT COVERED BY ARBITRATION:** Notwithstanding any other terms of the Arbitration Provisions, you cannot elect to arbitrate Lender's self-help or judicial remedies including, without limitation, repossession or foreclosure, with respect to any property that secures any transaction described under the definition of "Covered Claims." In the event of a default under those transactions, Lender can enforce its rights to your property in court or as otherwise provided by law, and you cannot require that Lender's actions be arbitrated. Provided, however, that Lender can elect to arbitrate such claims and, if such election is made, you shall be bound by such election and the terms of the Arbitration Provisions shall govern the proceedings. Lender's exercise of its rights under this paragraph shall not be deemed a waiver of its rights to elect arbitration.

**ARBITRATION RULES AND PROCEDURES:**

A. **APPLICABLE RULES:** Arbitration will be conducted under the rules and procedures of the National Arbitration Forum ("NAF") or successor organization that are in effect at the time arbitration is started and under the rules set forth in the Arbitration Provisions. If there is any conflict between NAF rules or procedures and the Arbitration Provisions, the Arbitration Provisions shall govern. You may obtain a copy of the rules by calling 1-800-474-2371 or at the NAF website at www.arb-forum.com.

B. **SELECTION OF ARBITRATOR:** NAF maintains lists of approved arbitrators. NAF will provide each of us a list of seven (7) possible arbitrators. Each of us will have an opportunity to strike three (3) persons from that list, and you will have the first three (3) strikes. After each of us has used its strikes, the remaining person shall then serve as arbitrator.

C. **CONDUCT OF PROCEEDINGS:** In conducting the arbitration proceedings, the arbitrator shall be bound by the Federal Rules of Evidence. In the event of a conflict between NAF rules or procedures and Federal Rules of Evidence, the Federal Rules of Evidence control. The arbitrator's findings, reasoning, decision, and award shall be set forth in writing, and shall be based upon and consistent with the law of the jurisdiction that applies to the Arbitration Provisions and the Loan Agreement. The arbitrator must abide by all applicable laws protecting the attorney-client privilege, the attorney work product doctrine, or any other applicable privileges.

D. **ENFORCEMENT AND APPEAL OF DECISION:** The decision and judgment of the arbitrator shall be final, binding, and enforceable in any court having jurisdiction over the dispute. The arbitrator's findings, decision, and award shall be subject to judicial review on the grounds set forth in 9 U.S.C. § 10, as well as on the grounds that the findings, decision, and award are manifestly inconsistent with the terms of the Loan Agreement, Arbitration Provisions or the applicable laws or rules.

E. **LIMITATION OF PROCEEDINGS:** You and Lender further agree that the arbitrator will be restricted to resolving just the claims, disputes, or controversies between us and the other parties covered by the Arbitration Provisions. Arbitration is not available and shall not be conducted on a class-wide basis or consolidated with other claims or demands filed by other persons. You shall not participate in a representative capacity or as a member of any class of claimants pertaining to any Covered Claim.

F. **STARTING ARBITRATION:** Either you or Lender can start arbitration any time a Covered Claim arises between you and us. To start arbitration, you or Lender must do the following things: (a) complete a Demand For Arbitration (Contact NAF for a copy.); (b) send three copies of the completed Demand For Arbitration and three copies of this agreement, along with the filing fee, to National Arbitration Forum, P. O. Box 50191, Minneapolis, Minnesota 55405; and (c) send one copy of the Demand For Arbitration to the other party (that is, if Lender starts arbitration, Lender sends it to you; if you start arbitration, you send it to Lender) at the address shown herein.

G. **COSTS OF ARBITRATION:** If you start arbitration, you agree to pay the initial filing fee required by NAF up to a maximum of $125. Lender agrees to pay for the filing fee in excess of $125 and to pay any deposit required by NAF. After NAF receives a Demand For Arbitration, it will bill Lender for that excess. Lender also agrees to pay the costs of the arbitration proceeding up to a maximum of one day (eight hours) of hearings. If Lender starts arbitration, Lender will pay the filing fee, required deposit, and costs of one day of hearings. You must pay for the cost of your travel to arbitration. If the arbitration hearings continue for more than one day, NAF rules shall determine what portion of the costs you or Lender will pay for the additional days. Each party, however, will pay its own costs, expert witness fees and attorneys' fees, unless otherwise required by law or by other terms of the Loan Agreement.

H. **LOCATION OF THE ARBITRATION:** The arbitration will take place in the county where you live unless you and Lender agree to another location. If you and Lender agree, all or a portion of the arbitration proceedings can be conducted by telephone conference.

I. **FORUM SELECTION CLAUSE:** If either you or Lender need to file a lawsuit to enforce the Arbitration Provisions, or to pursue claims that either may or may not be arbitrable under the Arbitration Provisions, the exclusive venue for that suit will be a state court located in the county where Lender's office is located and where you signed the Loan Agreement, or in the federal district court covering that county, unless the governing law requires suit to be filed in another location. Nothing in this clause shall prevent either you or Lender from enforcing its rights under the Arbitration Provisions if a Covered Claim is filed in court.

**ADDITIONAL INFORMATION:** You may obtain additional information about arbitration by contacting the National Arbitration Forum, Inc. at: P.O. Box 50191, Minneapolis, Minnesota 55405, (800) 474-2371 (Telephone), (612) 631-0802 (Fax), www.arb-forum.com (E-Mail).

**OTHER IMPORTANT AGREEMENTS:** You and Lender agree:

(a) The Arbitration Provisions do not affect any statute of limitations.
(b) The loan and insurance transactions between you, Lender and other applicable parties are transactions involving interstate commerce, using funds from outside the state.
(c) The Federal Arbitration Act, not state arbitration laws or procedures, applies to and governs the Arbitration Provisions.
(d) The Arbitration Provisions apply to and run to the benefit of all assigns, successors, executors, heirs, and/or representatives of yours and Lender's.
(e) If any term of the Arbitration Provisions is unenforceable, the remaining terms are severable and enforceable to the fullest extent permitted by law.
(f) The Arbitration Provisions supersede any prior arbitration agreement that there may be between you and Lender.
(g) The Arbitration Provisions apply even if your loan has been changed, refinanced, paid in full, charged-off, or discharged or modified in bankruptcy.

**PLEASE GO BACK AND READ THE ARBITRATION PROVISIONS CAREFULLY. THEY LIMIT CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT WHEN AND WHERE TO BRING A COURT ACTION. BY SIGNING YOUR LOAN AGREEMENT, YOU ACKNOWLEDGE THAT YOU HAVE READ AND RECEIVED A COPY OF THE ARBITRATION PROVISIONS AND AGREE TO BE BOUND BY ALL OF THE TERMS OF THE ARBITRATION PROVISIONS AND YOUR LOAN AGREEMENT.**

---

**NOTICE:** The following NOTICE applies if this loan is subject to the FTC Trade Regulations Rule on the Preservation of Consumers' Claims and Defenses:
**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

## NOTE ALLONGE

THIS ENDORSEMENT IS INCORPORATED INTO AND SHALL BE DEEMED PART OF THE NOTE TO WHICH IT IS ATTACHED.

| | |
|---|---|
| Borrower 1: | ROGER G MORFEY |
| Borrower 2: | GERALDINE L MOFEY |
| Date of Loan: | 03/18/02 |
| Loan Amount: | $92,499.00 |
| Property Address: | 3108 W HENSLEY RD |
| City, State & Zip: | CHAMPAIGN, IL 61821 |
| Account # | ███████ |

*Pay to the order of:*

Without recourse
**SPRINGLEAF FINANCIALSERVICES OF ILLINOIS INC., F/K/A
AMERICAN GENERAL FINANCIAL SERVICES OF ILLINOIS, INC.
ALSO D/B/A AMERICAN GENERAL FINANCE INC.**

*[signature]*
_____
Monte Conrad
Vice President

8

2002R09790

RECORDED ON

03-19-2002   3:39:57

CHAMPAIGN COUNTY
RECORDER
BARBARA A. FRASCA

REC. FEE: 26.00
REV FEE:
PAGES:     5
PLAT ACT:  0
PLAT PAGE:

**ALLIED TITLE SERVICES**

Recorder's Use

This instrument prepared by: & return to:

THOMAS J LUDWIG
(name)

505 S NEIL ST
(address)

CHAMPAIGN, IL 61820-5231

**OPEN-END MORTGAGE**

THIS OPEN-END MORTGAGE ("Security Instrument") is given 03/18/02 _____. The mortgagor is ROGER GENE MORFEY AND GERALDINE L MORFEY _____
HUSBAND & WIFE ("Borrower"). (indicate marital status)
This Security Instrument is given to AMERICAN GENERAL FINANCIAL SERVICES OF ILLINOIS, INC. _____, which is organized and existing under the laws of Illinois, and whose address is 505 S NEIL ST   CHAMPAIGN, IL 61820-5231
Illinois ("Lender"). Borrower may incur indebtedness to Lender in amounts fluctuating from time to time up to the appraised value of the real estate secured under this Security Instrument, but not exceeding the Credit Limit set by Lender (initially $ 92499.00 ), which amount constitutes the maximum principal amount that may be secured at any one time under this Security Instrument. This debt is evidenced by Borrower's Revolving Line of Credit Agreement and Disclosure Statement dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable as provided in the Note. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note; and (d) the unpaid balances of loan advances made after this Security Instrument is delivered to the recorder for record. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to Lender with mortgage covenants, to secure the payment of the foregoing indebtedness of Borrower from time to time, the following described property located in CHAMPAIGN _____ County, Illinois:

THE WEST 20 RODS OF THE EAST 60 RODS OF THE SOUTH 16 RODS OF THE SOUTHEAST QUAR
TER OF THE SOUTHEAST QUARTER OF SECTION 16, TOWNSHIP 20 NORTH, RANGE 8 EAST OF
THE THIRD PRINCIPAL MERIDIAN, SITUATED IN CHAMPAIGN COUNTY, ILLINOIS.

Prior Instrument Reference: Volume _____, Page _____;

013-00007 ILX251 Revolving Mortgage (10-14-01)                    PAGE 1 OF 5

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. At the request of Lender, Borrower shall begin making monthly payments into an escrow account for the payment of yearly taxes, insurance and other yearly charges imposed upon the Property.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied as provided in the Note.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Note whether or not then due. The 30-day period will begin when the notice is given.

Unless the Note provides otherwise, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payment. If under paragraph 18 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. Preservation and Maintenance of Property; Leaseholds. Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

7. Protection of Lender's Rights in the Property; Mortgage Insurance. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees if and as permitted by applicable law, and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

8. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

9. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the even of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fractions: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument whether or not then due.

Unless the Note provides otherwise, any application of proceeds to principal shall not operate to release the liability of the original referred to in paragraphs 1 and 2 or change the amount of such payments.

10. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason by any demand made by the original Borrower or Borrower's successor in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waive of or preclude the exercise of any right or remedy.

11. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

12. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.

13. Notices. Any notice to Borrower provided in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by federal law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or, if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised if the exercise of this option by Lender is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

17. Borrower's Right to Reinstate. To the extent required by applicable law, Borrower may have the right to have enforcement of this Security Instrument discontinued. Upon reinstatement by Borrower, this Security Instrument and the obligations secured thereby shall remain fully effective as if no acceleration had occurred.

18. Acceleration; Remedies. Except as provided in paragraph 16, if Borrower is in default due to the occurrence of any of the events of default provided in the "DEFAULT; TERMINATION AND ACCELERATION BY LENDER" provision of the Note and a Judicial Foreclosure Proceeding has commenced, Lender shall give Borrower notice specifying: (a) the default; (b) the action required to cure the default; (c) a date, not less than 90 days from the date the notice is given to Borrower, by which the default must be cured (unless a court having jurisdiction of a foreclosure proceeding involving the Property; shall have made an express written finding that Borrower has exercised Borrower's right to reinstate the same mortgage within the five (5) years immediately preceding the finding; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, and sale of the Property. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees if and as permitted by applicable law and costs of title evidence.

19. Lender in Possession; Assignment of Rents. Upon acceleration under paragraph 18 or abandonment of the Property, Lender (by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees if and as permitted by applicable law, and then to the sums secured by this Security Instrument. Nothing herein contained shall be construed as constituting Lender a "mortgage in possession," unless Lender shall have entered into and shall remain in actual possession of the Property.

20. Release. Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument, Borrower shall pay any recordation costs but shall not be required to pay any other charges.

21. Advances to Protect Security. This Security Instrument shall secure the unpaid balance of advances made by Lender, with respect to the Property, for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and expressly releases and waives Borrower's right of homestead in the Property. By signing below, GERALDINE L MORFEY, the spouse of Borrower, has also executed this instrument solely for the purpose of mortgaging and releasing (and does hereby so release and mortgage) all of such spouse's rights of homestead in the property.

Witnesses:

_____        _Roger Gene Morfey_____ (Seal)
(print or type name                      Borrower ROGER GENE MORFEY
below line)

_____        _Geraldine L. Morfey_____ (Seal)
(print or type name                      Borrower GERALDINE L MORFEY
below line)


STATE OF ILLINOIS, COUNTY OF __CHAMPAIGN_____ SS:


I, __ANNGELENA M. RHOADES_____, a Notary Public in and for said County and State, do hereby certify that __ROGER GENE MORFEY & GERALDINE L MORFEY , HIS WIFE_____
(if acknowledged by wife, as well as husband, add "his wife" after wife's name)

personally known to me to be the same person(s) whose name(s) __ARE____ subscribed to the foregoing instrument, appeared before me this __18TH_____ day of __MARCH_____, __2002_____, in person, and acknowledged that __THEY_____ signed and delivered the said instrument as __THEIR___ free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal this __18TH____ day of __MARCH____, A.D. __2002__.

{SEAL}
My Commission expires:
__01/21/06_____                    _Anngelena M. Rhoades_____
                                         Notary Public

> "OFFICIAL SEAL"
> ANNGELENA M. RHOADES
> Notary Public, State of Illinois
> My commission expires 01/21/06

When Recorded Return To:
Nationstar Mortgage LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Loan No ███████
Springleaf Loan No 26177636

**2015R18171**
REC ON: 09/17/2015  4:30:00 PM
CHAMPAIGN COUNTY
**BARBARA A. FRASCA, RECORDER**
REC FEE: 44.00
RHSPS Fee: 9.00
PAGES 1
PLAT ACT: 0PLAT PAGE:

## ASSIGNMENT OF MORTGAGE

Regarding this instrument, contact Nationstar Mortgage, LLC, 4000 Horizon Way, Irving, TX 75063, telephone # 972-956-6320, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **SPRINGLEAF FINANCIAL SERVICES OF ILLINOIS, INC. F/K/A AMERICAN GENERAL FINANCIAL SERVICES OF ILLINOIS, INC., WHOSE ADDRESS IS 601 N.W. SECOND St., EVANSVILLE, IN, 47708, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to **U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR SPRINGLEAF MORTGAGE LOAN TRUST 2013-2, WHOSE ADDRESS IS C/O 4000 HORIZON WAY, IRVING, TX 75063, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage is dated 03/18/2002, and made by **ROGER GENE MORFEY AND GERALDINE L. MORFEY** to **AMERICAN GENERAL FINANCIAL SERVICES OF ILLINOIS, INC.** and recorded 03/19/2002 in the records of the Recorder or Registrar of Titles of **CHAMPAIGN** County, **Illinois**, in **Document # 2002R09790**.

Upon the property situated in said State and County as more fully described in said Mortgage or herein to wit:
THE WEST 20 RODS OF THE EAST 60 RODS OF THE SOUTH 16 RODS OF THE SOUTHEAST QUAR TER OF THE SOUTHEAST QUARTER OF SECTION 16, TOWNSHIP 20 NORTH, RANGE 8 EAST OF THE THIRD PRINCIPAL MERIDIAN,SITUATED IN CHAMPAIGN COUNTY,ILLINOIS.

Re-Record: DT 10/21/2011 REC DT 10/27/2011 INST 2011R22356.

Property is commonly known as: 3108 W HENSLEY RD, CHAMPAIGN, IL 61821.

**Dated this 17th day of September in the year 2015**
SPRINGLEAF FINANCIAL SERVICES OF ILLINOIS, INC. F/K/A AMERICAN GENERAL FINANCIAL SERVICES OF ILLINOIS, INC.

*[signature]*
SUSAN SCHOTSCH
VICE PRESIDENT

All persons whose signatures appear above are employed by NTC, have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 17th day of September in the year 2015, by Susan Schotsch as VICE PRESIDENT of SPRINGLEAF FINANCIAL SERVICES OF ILLINOIS, INC. F/K/A AMERICAN GENERAL FINANCIAL SERVICES OF ILLINOIS, INC., who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

*[signature]*
NICOLE BALDWIN
COMM EXPIRES: 08/05/2016

Nicole Baldwin
Notary Public State of Florida
My Commission # EE 222285
Expires August 5, 2016

**Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**

Recording Requested By:
NATIONSTAR MORTGAGE DBA MR. COOPER

When Recorded Return To:

DOCUMENT ADMINISTRATION
NATIONSTAR MORTGAGE DBA MR. COOPER
8950 CYPRESS WATERS BLVD
COPPELL, TX  75019

**2018R14470**
REC ON: 08/20/2018 11:33:34 AM
CHAMPAIGN COUNTY
**MARK SHELDEN**
REC FEE: 52.00
RHSPS Fee: 9.00
REV FEE:
PAGES 2
PLAT ACT: 0 PLAT PAGE:

### CORPORATE ASSIGNMENT OF MORTGAGE

Champaign, Illinois
**SELLER'S SERVICING**       "MORFEY"

Date of Assignment: August 14th, 2018
Assignor: U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR SPRINGLEAF MORTGAGE LOAN TRUST 2013-2, BY NATIONSTAR MORTGAGE LLC, ITS ATTORNEY-IN-FACT at 8950 CYPRESS WATERS BLVD, COPPELL, TX  75019
Assignee: U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS INDENTURE TRUSTEE FOR THE CIM TRUST 2017-8 MORTGAGE-BACKED NOTES, SERIES 2017-8 at 4000 HORIZON WAY, IRVING, TX  75063

Executed By: ROGER GENE MORFEY AND GERALDINE L MORFEY, HUSBAND & WIFE  To: AMERICAN GENERAL FINANCIAL SERVICES OF ILLINOIS, INC.
Date of Mortgage:  03/18/2002  Recorded:  03/19/2002  as Instrument No.: 2002R09790  In the County of Champaign, State of Illinois.

Property Address: 3108 W HENSLEY RD, CHAMPAIGN, IL  61821

Legal:  THE WEST 20 RODS OF THE EAST 60 RODS OF THE SOUTH 16 RODS OF THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 16, TOWNSHIP 20 NORTH, RANGE 8 EAST OF THE THIRD PRINCIPAL MERIDIAN, SITUATED IN CHAMPAIGN COUNTY, ILLINOIS.

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $92,499.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR SPRINGLEAF MORTGAGE LOAN TRUST 2013-2, BY NATIONSTAR MORTGAGE LLC, ITS ATTORNEY-IN-FACT
On <u>August 14th, 2018</u>

By: _____
OMAR BASPED, Vice-President

STATE OF Texas
COUNTY OF Dallas

On August 14th, 2018, before me, DANIELA HORVATH, a Notary Public in and for Dallas in the State of Texas, personally appeared OMAR BASPED, Vice-President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
DANIELA HORVATH
Notary Expires: 01/27/2020 #128862890

DANIELA HORVATH
Notary Public, State of Texas
Comm. Expires 01-27-2020
Notary ID 128862890

(This area for notarial seal)

**Prepared By:** Trenita Frazier, NATIONSTAR MORTGAGE DBA MR. COOPER 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019 1-888-480-2432

2018R14470   2 OF 2

8003636
Tx:4001859

2011R22356
REC ON: 10/27/2011 09:28:09 AM
CHAMPAIGN COUNTY
**BARBARA A. FRASCA, RECORDER**
REC FEE: 25.00
RHSPS Fee: 10.00
PAGES 4
PLAT ACT: OPLAT PAGE:

WHEN RECORDED MAIL TO:

Springleaf Financial Services
510 N. Cunningham Ste 2
Urbana, IL 61802

This instrument was prepared by

Springleaf Financial Services
510 N. Cunningham Ave Ste 2
Urbana, Il 61801

_____ [Space Above This Line For Recording Data] _____

## LOAN MODIFICATION AGREEMENT
(For Modifying Home Equity Line of Credit Accounts)

This Loan Modification Agreement ("Agreement"), made and effective this 21st day of October, 2011, by and between Roger G Morfey and Geraldine L Morfey

("Borrower") & Springleaf Financial Services

("Lender"), modifies, amends, and supplements (to the extent this Agreement is inconsistent with the terms of the Note):

(1) the Home Equity Line of Credit Agreement ("Note"), dated the 18th day of March, 2002, &

(2) the Mortgage, Deed of Trust, Deed to Secure Debt, or Security Deed ("Security Instrument") dated the 19th day of March, 2002, and recorded in Book or Liber _____, at page(s) _____, of the 2002R09790 _____

Records of Champaign County _____ which covers the real and

personal property described in the Security Instrument and defined therein as the "Property", in the original

070-00867 (REV. 3-11) HELOC MOD AGREEMENT                1

maximum principal amount of U.S. $ 92499.00 _____, located at:

3108 W Hensley Rd Champaign Il 61821 _____

_____,
(Property Address)

If this Agreement is to be recorded, the real property described is set forth as follows:
THE WEST 20 RODS OD THE EAST 60 RODS OF THE SOUTH 16 RODS OF THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 16, TOWNSHIP 20 NORTH, RANGE 8 EAST OF THE THIRD PRINCIPAL MERIDIAN, SITUATED IN CHAMPAIGN COUNTY, ILLINOIS.

This Agreement also supercedes and replaces any prior loan modification agreement(s) between Lender and Borrower as of the effective date of this Agreement.

Terms not defined in this Agreement are as defined in the Note and/or Security Agreement.

As of the Modification Effective Date, the amount of the principal balance payable under the Note and the Security Instrument (the "Unpaid Principal Balance") will be $ 79701.72 ____. In consideration of the mutual promises and agreements contained herein, Borrower and Lender (together the "Parties") agree that beginning on the Modification Effective Date, and after both Parties have executed this Agreement, (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. **ANNUAL PERCENTAGE RATE**. Borrower promises to pay the Principal Balance, plus interest, to the order of Lender. $ 0.00 _____ of the Principal Balance shall be deferred (the "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $ 79701.72 ____. The unpaid and deferred interest that has not been capitalized (the "Deferred Interest") will be $ 0.00 _____. Interest at the **Annual Percentage Rate** of 6.00 % will begin to accrue on the Interest Bearing Principal Balance as of 10/21/11 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 10/21/11 . *Assuming no additional sums are advanced under the Note and assuming that all minimum monthly payments are made in full and on time, my payment schedule, including my minimum monthly payments and APR, and my Total Deferred Payment Amount as defined below, based on the current Principal Balance, will be:

| Months | Annual Percentage Rate | APR Change Date | Minimum Monthly Payment* | Monthly Payment Begins On |
|--------|------------------------|-----------------|--------------------------|---------------------------|
| 1 - 24 | 6.00 | (Date of Agreement) 10/21/11 | $ 477.85 | 10/11/11 |
| 25 - 360 | 7.00 | 10/21/13 | $ 702.57 | Beginning the 10th month, on the same day of the month as the first payment under this Agreement is due |

Borrower also agrees to pay in full $ 0.00 _____, which is the sum of (1) the Deferred Principal Balance and (2) Deferred Interest (the "Total Deferred Payment Amount"), plus any other amounts still owed by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or on (iii) the maturity date ("Maturity Date").

070-00867 (REV. 3-11)  HELOC MOD AGREEMENT                 2

Minimum monthly payments will be paid until the Principal Balance and accrued interest are paid in full.

2. REPAYMENT TERM.
   The assumed repayment term of the Note (and Security Instrument) is 360 months from the date of the Agreement.

3. Minimum monthly payments will continue to be calculated in the manner set forth in the Note. Borrower must pay the minimum monthly payment shown on each monthly statement by the payment due date.

4. Place of Payment. Borrower must continue to make the monthly payments in the manner and at such place as Lender may require.

5. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

6. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions of the Note and Security Instrument are forever canceled, null and void, as of the date of this Agreement:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b) all terms and provisions of any adjustable rate rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

7. Borrower understands and agrees that:

   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Borrower has no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument.

(d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

This modification agreement modifies the Note and Security Instrument referenced above as expressly provided herein. Except where otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

In Witness Whereof, Lender and Borrower have executed this Agreement.

Springleaf Financial Services              Roger Murphy (Seal)
Name of Lender                                    Borrower

By: Lisa Goudie                              Geraldine Murphy (Seal)
                                                   Borrower

Anneelena Rhoades  10-21-11    Lisa Goudie    10-21-11  (Seal)
Witness Signature        Date    Witness Signature        Date

070-00867 (REV. 3-11) HELOC MOD AGREEMENT        4